# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

GEORGE SOLER YOUNG,   )
          )
   **Plaintiff,**     )
          )
**v.**           )   **Case No. CIV-15-641-R**
          )
**HECTOR A. RIOS, Warden, et al.,** )
          )
   **Defendants.**    )

## REPORT AND RECOMMENDATION

Plaintiff George Soler Young, a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this federal civil rights action under 42 U.S.C. § 1983 alleging violations of the United States Constitution. *See* Compl. (Doc. No. 1). United States District Judge David L. Russell has referred this matter to the undersigned Magistrate Judge for preliminary review in accordance with 28 U.S.C. § 636. Defendants have moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. Nos. 49, 68) to dismiss Plaintiff's claims, Plaintiff has responded (Doc. Nos. 75, 76), and one Defendant has replied (Doc. No. 77).

## PLAINTIFF'S CLAIMS AND RELIEF SOUGHT

Plaintiff, who is presently incarcerated at Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma, initially filed this lawsuit in the United States District Court for the Eastern District of Oklahoma. *See* Compl. at 1.[1] Following service upon all 21

---

[1] Citations to documents filed in this Court use the page numbers assigned by the Court's electronic filing system.

Defendants, the case was transferred to this Court on the basis of improper venue. *See* Doc. No. 53.

In his Complaint, Plaintiff alleges claims against former Oklahoma Department of Corrections ("ODOC") Director Robert Patton;[2] GEO Group Inc. ("GEO"); GEO Vice-President Reed Smith; Hector A. Rios, Warden of Lawton Correctional Facility ("LCF"); and 17 LCF staff members. *See* Compl. at 1-2, 12-13.[3] LCF is a private prison owned and operated by GEO. *Id.* at 3. Defendants Patton, Rios, Smith, and GEO are sued in both their official and individual capacities. All other Defendants are sued in their individual capacities only. *Id.* at 13.

Plaintiff's claims arise from events alleged to have occurred while he was housed at LCF. *See id.* at 3-4, 6-7. Through this lawsuit, Plaintiff seeks nominal, compensatory, and punitive damages as well as declaratory and injunctive relief. *Id.* at 14.

Plaintiff alleges that Defendants have violated his rights under the First and Eighth Amendments. Liberally and reasonably construed, Plaintiff's Complaint raises the following claims: (1) violation of the Eighth Amendment based upon a 2013 assault by LCF staff members; (2) violation of the Eighth Amendment based upon denial of proper

---

[2] Because Robert Patton is no longer ODOC Director, the current Director should be substituted as Defendant if any official-capacity claims alleged against Defendant Patton remain after disposition of this Report and Recommendation. *See* Fed. R. Civ. P. 25(d); *Director's Office*, Okla. Dep't of Corr., https://www.ok.gov/doc/Organization/Director's_Office/index.html (last visited Mar. 8, 2016). The undersigned refers to all Defendants as they are identified in the Complaint.

[3] The 17 LCF-staff-member Defendants are Taime, Rauche, Wiltshire, Benoit, Hill, Roody, DeAlmenau, Sessurs, Gibson, Cation, Cantwell, Caldwell, Calhoun, Johns, Alston, Ellington, and Phume.

medical, dental, and vision care; (3) violation of the First and Eighth Amendments and unlawful conspiracy based upon a retaliatory transfer of Plaintiff from LCF to OSP; (4) violation of the First Amendment based upon Defendants' refusal to address administrative grievances; and (5) a challenge to a requirement that Plaintiff be required to submit payments or copayments for medical care, based upon the fact that this requirement was not in place in 1994, when he began serving his current prison sentence, and upon the fact that this requirement results in taxpayers being double-billed. *See id.* at 2, 4-8, 10-11.[4]

## STANDARD OF REVIEW

While the Court construes a pro se litigant's pleadings liberally, all parties must adhere to applicable procedural rules. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Under such rules, the plaintiff must state a claim upon which relief may be granted, i.e., the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court reviewing the sufficiency of a complaint "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

Defendant Patton has filed a Motion to Dismiss ("Def. Patton Mot.," Doc. No. 49), and the remaining 20 Defendants, who are jointly represented, also have filed a Motion to

---

[4] Although Plaintiff's Responses refer to state-law tort claims, *see* Pl.'s Resp. to Def. Patton Mot. (Doc. No. 75) at 2; Pl.'s Resp. to GEO Defs.' Mot. (Doc. No. 76) at 3, his Complaint is not reasonably construed as raising any such claim.

Dismiss ("GEO Defs.' Mot.," Doc. No. 68), both relying only upon the pleadings to support their arguments for dismissal. In addition, Defendants have filed a Special Report (Doc. No. 67), in accordance with the Court's order (Doc. No. 62) and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has filed a response to each Motion to Dismiss, *see* Pl.'s Resp. to Def. Patton Mot.; Pl.'s Resp. to GEO Defs.' Mot. The undersigned has declined to convert the Motions to Dismiss to motions for summary judgment and has excluded from consideration the Special Report, Plaintiff's proffered exhibits (*see* Doc. Nos. 76-1 to 76-13), and all other evidence outside the pleadings. *See* Fed. R. Civ. P. 12(d); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).

Defendants move to dismiss certain of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under that rule, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (1991); *see also Whitney*, 113 F.3d at 1173-74. Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

ANALYSIS

## I.       Defendant Patton's Eleventh Amendment Immunity to Suit

Citing the Eleventh Amendment of the U.S. Constitution, Defendant Patton moves to dismiss Plaintiff's 42 U.S.C. § 1983 claims to the extent they seek money damages from Defendant Patton in his official capacity as ODOC Director. *See* Def. Patton Mot. at 12-13; Compl. at 12, 13; Fed. R. Civ. P. 12(b)(1). The Court therefore is obligated to address whether Defendant Patton enjoys immunity from suit. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that if a state defendant raises the issue, "addressing the threshold jurisdictional matter [is] obligatory"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that Eleventh Amendment immunity "can be waived" but "constitutes a bar to the exercise of federal subject matter jurisdiction" when effectively asserted).

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state. U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996).

But Eleventh Amendment immunity is not absolute. There are three exceptions. First, a state may consent to suit in federal court. Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citations omitted). Eleventh Amendment immunity applies to any state agencies considered to be "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). A defendant's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted).

"Oklahoma has not consented to be sued in federal court." *Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012); *accord Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006); *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983. *See Berry*, 495 F. App'x at 921-22; *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979). Thus, the State of Oklahoma's Eleventh Amendment immunity from § 1983 claims for money damages in federal court remains intact.

Here, the relevant state agency is ODOC, because Defendant Patton was employed by that agency during the events giving rise to this lawsuit. *See* Compl. at 12. "ODOC is . . . shielded by sovereign immunity because it is an arm of the state." *Berry*, 495 F.

App'x at 922 (citing *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988)). And "it is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'" *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)). ODOC's immunity extends to a plaintiff's § 1983 claims against ODOC employees who are sued in their official capacities for damages. *Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("Because the defendants are employees of the Oklahoma Department of Corrections . . . , the Eleventh Amendment applies to the official-capacity claims for damages."); *accord Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, 561 F. App'x 661, 665 (10th Cir. 2014).

Defendant Patton, as an employee of ODOC in his official capacity, therefore is protected by Eleventh Amendment immunity to the extent damages are sought by Plaintiff under 42 U.S.C. § 1983. *See Cleveland*, 590 F. App'x at 730; *Eastwood*, 846 F.2d at 632. Accordingly, Plaintiff's § 1983 claims seeking monetary relief from ODOC Director Robert Patton in his official capacity are barred by the Eleventh Amendment and should be dismissed without prejudice.

## II.     Plaintiff's Remaining 42 U.S.C. § 1983 Claims

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983; *Phillips v. Tiona*,

508 F. App'x 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by inmates . . . .").

When a defendant is sued in his or her individual capacity under § 1983, the complaint must meet specific requirements as to each defendant. First, the plaintiff must allege facts that establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Second, the plaintiff must allege facts that establish a causal connection between the acts of that particular defendant and the alleged violation of a federal right. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). Finally, the plaintiff must allege facts to establish that the defendant acted with the state of mind required for the alleged underlying federal rights violation. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

These requirements also apply to pleading a § 1983 claim against a supervisor defendant whose liability is based upon his or her supervisory responsibilities, as even though "direct participation" is unnecessary, liability must "be predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Pahls*, 718 F.3d at 1225 (quoting *Iqbal*, 556 U.S. at 676); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-69 (10th Cir. 2013) ("The plaintiff therefore must show an 'affirmative link' between the supervisor and the constitutional violation."); *Dodds v. Richardson*, 614 F.3d 1185, 1198-1201 (10th Cir. 2010) ("[Section] 1983 liability only

[may] be imposed upon those defendants whose own individual actions cause a constitutional deprivation . . . .").

### A. Plaintiff's Eighth Amendment Claim: October 2013 Assault

#### 1. Eighth Amendment Standard

Because the Eighth Amendment prohibits "cruel and unusual punishments," the Amendment "places restraints on prison officials, who may not . . . use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see* U.S. Const. amend. VIII. In order to hold prison officials liable for excessive force, a two-prong standard applies: "(1) an objective prong that asks 'if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials acted with a sufficiently culpable state of mind.'" *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999) (alteration omitted) (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). With respect to the second prong, "when 'officials stand accused of using excessive physical force,'" the court asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted); *see also DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001).

#### 2. Whether Plaintiff Has Stated an Eighth Amendment Claim

In his Complaint, Plaintiff alleges that on October 25, 2013, he was physically and sexually assaulted by LCF officials during a strip search. *See* Compl. at 2, 3, 7. Plaintiff alleges:

I was assigned to the Protective Custody Unit (PCU) at LCF in 2004. [O]n October 25th, 2013 [Defendant Rios] ordered that [Defendants] Hill and Roody lock me up in the unit's disciplinary unit or (DU). Three officers [Defendants] Taime, Rauche, and Wiltshire . . . began pushing, punching, beating, stomping me and tore and cut off all my clothes. I had my hands restrained in cuffs behind my back, and I had neither did, provoked nor gave them reason for such beating. [O]ne of the officers inserted what me cry out for help and camera, his finger(s) in my rectum or anus, causing me pain[. T]this incident went on without [Defendants] Hill or Roody stopping it. However a c.o. Tweedy has a camera and was told not to cut it on. They left me naked, and stopped only because other inmates in pod started yelling and complaining. I was refused medical for two days. And even although I asked for phone ignored and refused.

Compl. at 7.

### a. Personal Involvement or Participation

Assuming the truth of Plaintiff's allegations, the Complaint reasonably implicates Defendants Hill, Roody, Taime, Rauche, and Wiltshire in the alleged assault of October 25, 2013. *See* Compl. at 7. Plaintiff's allegations plausibly reflect that Defendants Taime, Rauche, and Wiltshire actively participated in the beating, stripping, and sexual assault of Plaintiff, and that Defendants Hill and Roody were present and aware of what was transpiring but nonetheless failed to prevent Plaintiff from being harmed. As to the latter Defendants, "a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993); *see also Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (denying qualified immunity to defendants where it was clearly established that even if an individual's own use of force was not excessive, "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983"). Plaintiff therefore has adequately alleged the personal

involvement or participation of these LCF officials as required to state a claim under § 1983. *See Pahls*, 718 F.3d at 1225; *Iqbal*, 556 U.S. at 676-77.

Plaintiff additionally mentions Defendant Rios, the LCF Warden, in his narrative of the assault, but Plaintiff does not allege facts regarding Defendant Rios' involvement or participation such as would be required to state a claim against him. Although a supervisor may be held liable if he or she is affirmatively linked to the constitutional violation, "Section 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Such an affirmative link requires "more than 'a supervisor's mere knowledge of his subordinate's' conduct." *Schneider*, 717 F.3d at 767 (quoting *Iqbal*, 556 U.S. at 677). Plaintiff alleges only that Defendant Rios ordered Defendants Hill and Roody to "lock [Plaintiff] up" in the disciplinary unit. Compl. at 7. Plaintiff's allegations do not reasonably support an inference that Defendant Rios knew that his order would cause others to violate Plaintiff's constitutional rights, much less that Rios personally participated in or facilitated the assault. *See Schneider*, 717 F.3d at 767-68.

Plaintiff does not identify any of the other 15 Defendants as direct or indirect actors in the events of October 25, 2013. Plaintiff thus has failed to plausibly allege the personal involvement or participation of Defendant Rios or of Defendants Patton, Smith, GEO, Benoit, DeAlmenau, Sessurs, Gibson, Cation, Cantwell, Caldwell, Calhoun, Johns, Alston, Ellington, or Phume. This claim should be dismissed without prejudice as to those Defendants. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 676-77; *Pahls*, 718 F.3d at 1225-26 ("When various officials have taken different actions with respect to a

plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights.").

b. Excessive Force

Again, in order to hold prison officials liable for excessive force, a two-prong standard applies: "(1) an objective prong that asks 'if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials acted with a sufficiently culpable state of mind.'" *Giron*, 191 F.3d at 1289 (alteration omitted). Regarding the objective component, Defendants contend that Plaintiff's complained-of conduct is only a *de minimis* use of physical force, insufficient to rise to the level of a constitutional violation. *See* GEO Defs.' Mot. at 2-5; *Hudson*, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks omitted)).

The objective component of an excessive force claim is "contextual and responsive to contemporary standards of decency." *Hudson,* 503 U.S. at 8 (internal quotation marks omitted). "[A]n inmate has a constitutional right to be secure in [his or] her bodily integrity and free from attack by prison guards." *Hovater*, 1 F.3d at 1068.

> Sexual abuse is repugnant to contemporary standards of decency and allegations of sexual abuse can satisfy the objective component of an Eighth Amendment excessive force claim. . . . . The right to be secure in

12

one's bodily integrity includes the right to be free from sexual abuse. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (holding that "plaintiffs' deprivations resulting from the sexual assaults are sufficiently serious to constitute a violation under the Eighth Amendment.").

*Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003).

Defendants compare the acts at issue to those considered in an unpublished Tenth Circuit case, *Rhoten v. Werholtz*, 243 F. App'x 364 (10th Cir. 2007). *See* GEO Defs.' Mot. at 3-5. In *Rhoten*, the Tenth Circuit upheld the dismissal of an Eighth Amendment excessive force claim where the plaintiff contended that he had been slammed, squeezed, and had his testicles pulled, finding that the defendant's use of force was *de minimis*. *See Rhoten*, 243 F. App'x at 365, 367 (citing *Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (holding that allegations of grabbing and twisting inmate's neck were not objectively harmful enough to establish excessive force claim); *Reed v. Smith*, No. 97-6341, 1999 WL 345493, at *4 (10th Cir. June 1, 1999) (holding inmate's allegations that prison officials grabbed, walked, and dragged him, and tried to ram him into a wall, were insufficient to state an excessive force claim)). But *Rhoten* is not persuasive here, because the claims rejected in *Rhoten*, based upon "grabbing" and "squeezing," allege objectively less harmful physical wrongdoing than Plaintiff's specific allegations—i.e., that he was pushed, punched, beaten, stomped on, handcuffed, had his clothes torn off, and had his anus painfully penetrated by instrumentation. *Compare* Compl. at 7, *with Rhoten*, 243 F. App'x at 365, *and Norton*, 432 F.3d at 1156, *and Reed*, 1999 WL 345493, at *4. And under governing Tenth Circuit authority, deprivations suffered through sexual assaults "are sufficiently serious to constitute a violation under the Eighth Amendment."

*Barney*, 143 F.3d at 1310; *see, e.g.*, *Smith*, 339 F.3d at 1212 (finding allegations of forced exposure, rape, and rape by instrumentation satisfied the objective prong of an excessive force claim); *see also Giron*, 191 F.3d at 1290.

With respect to the subjective inquiry, "[w]here no legitimate penological purpose can be inferred from a prison employee's alleged conduct, including but not limited to sexual abuse or rape, the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" *Giron*, 191 F.3d at 1290 (quoting *Albers*, 475 U.S. at 320-21)); *accord Smith*, 339 F.3d at 1212-13. At least as pled, Plaintiff has adequately alleged that Defendants Taime, Rauche, Wiltshire, Hill, and Roody acted with an improper intent.[5]

Plaintiff thus has alleged a specific incident of physical and sexual abuse that is objectively sufficiently serious and not a *de minimis* use of physical force, and he has adequately alleged that the relevant Defendants had "a sufficiently culpable state of mind." *See* Compl. at 2, 3, 4-8; *Barney*, 143 F.3d at 1310; *Hudson,* 503 U.S. at 8; *Albers*, 475 U.S. at 320-21. Plaintiff's excessive force claim should not be dismissed as to Defendants Taime, Rauche, Wiltshire, Hill, and Roody.

### B. Plaintiff's Eighth Amendment Claim: Medical, Dental, and Vision Care

Plaintiff next asserts that he was denied proper medical, dental, and vision care while housed at LCF. *See* Compl. at 8, 10-11. "A prison official's deliberate

_____

[5] Although not considerable for purposes of Federal Rule of Civil Procedure 12(b)(6), materials outside the pleadings indicate another possibility, that Defendants were searching Plaintiff for contraband.

indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

1. Eighth Amendment Standard

A similar two-prong standard governs claims of deliberate indifference to serious medical needs. To establish the objective prong of this Eighth Amendment claim, Plaintiff must show "that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

> We have said that a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim. Moreover, a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.

*Id.* (citations and internal quotation marks omitted).

To establish the subjective component—i.e., deliberate indifference to a substantial risk of harm—Plaintiff must show that the prison official in question acted with a "culpable state of mind." *Id.*; *Farmer*, 511 U.S. at 834, 836.

> The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference. A prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role.

*Mata*, 427 F.3d at 751 (alteration, omission, citations, and internal quotation marks omitted); *see also Gamble*, 429 U.S. at 104-05 (noting that deliberate indifference can be manifested "by prison guards in intentionally denying or delaying access to medical care").

### 2. Plaintiff's Allegations

With respect to medical care, Plaintiff alleges that after the attack on October 25, 2013, he requested but was denied medical attention for two days. *See* Compl. at 7. Plaintiff alleges that on October 27, 2013, a nurse reported the incident, and Plaintiff was taken to "main medical." Compl. at 6. Plaintiff, however, alleges only that the attack caused nonspecific pain and presents no allegations that support an inference that he was suffering from an obvious, "sufficiently serious" medical need. *See* Compl. at 6-7; *Mata*, 427 F.3d at 751. And Plaintiff does not allege that the two-day delay caused him any harm, much less "substantial harm." *See* Compl. at 6-7; *Mata*, 427 F.3d at 751. Plaintiff's Eighth Amendment claim based upon denial of medical care following his October 2013 attack therefore should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Regarding his vision care, Plaintiff alleges: "On or about March 15, 2015 I was finally seen by an eye doctor and prescribed bifocals in order to able to properly see. I had to procure and buy prior to that my own reading glasses, just so I could read and write." Compl. at 11. An allegation that an individual requires reading glasses or

bifocals does not reflect either a diagnosed condition or a medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751; *see Canell v. Multnomah Cnty.*, 141 F. Supp. 2d 1046, 1057 (D. Or. 2001) ("While severe eye injuries or legal blindness may constitute a serious medical need, that is not the case with reading glasses."). And even assuming Plaintiff's vision constituted a sufficiently serious medical need, Plaintiff nowhere identifies a Defendant who knew of and disregarded this need or intentionally delayed Plaintiff's access to vision care. *See* Compl. at 11; *Mata*, 427 F.3d at 751; *Gamble*, 429 U.S. at 104-05. This claim should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

With respect to his dental care, Plaintiff alleges that various beatings by other prisoners and by staff

> ha[ve] caused [Plaintiff] loose[], broken teeth and defendants have not performed adequate and timely schedules, checkups nor followups. . . . . I've kept ample supplies of toothpaste, and used to floss, until defendants without warning or notification took all my floss and dental floss picks. Neither do defendants offer or s[ell] Listerine products to encourage good dentistry hygienic practices.
>
> I've been misle[]d, when they pulled teeth, which their inadequate and negligent acts and inactions caused me to lose. LCF person[n]el[] informed me they would get me partials and dentures. That's how I trusted them to remove some of my teeth, only to be told, that I could not get any partials or dentures because the ODOC did not have or want to pay the money for them. Then, even the broken teeth they left me with, they simply would not pull. It's with great shame and embarrassment that I face each day, unable to smile not caring to talk, for how I look. And my immediate concern is that . . . the present condition of my teeth, plaque buildup, could cause serious medical complications to include strokes, "heart attacks" and "even death."

Compl. at 10. Liberally construed, Plaintiff here contends that (1) he permitted unidentified LCF personnel to pull some of his teeth, after having been promised he would receive full or partial dentures; and (2) he has not received adequate dental care and has been denied the use of dental floss, floss picks, and Listerine products. *See* Compl. at 10.

As a threshold matter, Plaintiff offers only "collective allegations" and fails to "make clear exactly *who* is alleged to have done *what* to *whom*," as required to impose personal liability under § 1983. *Pahls*, 718 F.3d at 1225 (internal quotation marks omitted). Plaintiff therefore fails to allege any Defendant's personal involvement or participation in the alleged deprivation of dental care, as required to state a § 1983 claim.

Even if Plaintiff had adequately alleged a connection to any Defendant, Plaintiff's complaints of the denial of dentures and dental care do not rise to the level of a serious medical need. First, a denial of dentures can constitute a failure to meet a serious medical need when that allegation is made "in combination with certain other symptoms." *Kidwell v. Okla. Dep't of Corr.*, No. 13-CV-612, 2014 WL 2171647, at *11 (N.D. Okla. May 23, 2014). The court in *Kidwell* listed the following examples of adequate denture-related claims:

> Federal courts have found that denial of dentures can rise to a serious medical need in combination with certain other symptoms. *See, e.g., Farrow*[ *v. West*, 320 F.3d 1235 (11th Cir. 2003)] (valid deliberate indifference claim based on a fifteen-month delay in receiving dentures, during which time the plaintiff suffered from pain, bleeding, swollen gums, and periodic weight loss); *Wynn v. Southward,* 251 F.3d 588 (7th Cir. 2001) (inmate had a serious medical need for dentures based on claims of an inability to chew food, significantly impeding his ability to eat, and suffering bleeding, headaches, and disfigurement); *Hunt v. Dental Dept.*,

865 F.2d 198, 200 (9th Cir. 1989) (plaintiff's allegations that his loss of dentures caused him severe pain, bleeding gums, breaking teeth, and inability to eat properly were sufficient to state a claim of deliberate medical indifference under § 1983); *Williams v. Mason,* 210 F. App'x 389, 390 (5th Cir. 2006) (unpublished) (Court concluded plaintiff may have a serious medical need for dentures after he complained he suffered cuts and bleeding, difficulty chewing, digestive difficulties and was denied dentures and a soft diet); *Vazquez v. Dretke,* 226 F. App'x 338 (5th Cir. 2007) (unpublished) (plaintiff's allegations of difficulty eating, headaches, disfigurement, severe pain, bleeding in his mouth, and blood in his stool because he had no dentures were "sufficient to state a claim for a serious medical need for dentures"); *Stone v. Peacock,* 2014 WL 172256 (S.D. Ga. Jan. 15, 2014) (unpublished) (denying qualified immunity where plaintiff alleged prolonged delay in dentures, during which time he suffered severe pain, infections, stomach problems and weight loss).

*Id*. (granting summary judgment to defendants on a denial-of-dentures claim where plaintiff with one remaining tooth "repeatedly declined a soft diet," complained only of digestive issues, and record did not support allegations of deliberate indifference).

Here, Plaintiff does not allege facts that show a similarly serious medical need, such as that he has requested and been denied a soft diet, is unable to receive adequate nutrition, or otherwise is deprived of "the minimal civilized measure of life's necessities." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted). Although the Complaint alleges that Plaintiff lost "over 50" pounds after being transferred to OSP, Plaintiff does not allege that this weight loss was caused by his lack of dentures. *See* Compl. at 6, 9. And Plaintiff's speculative concerns about possible future health issues caused by his dental condition are too vague and unsupported to establish either a diagnosed or obvious serious medical need. *See Mata*, 427 F.3d at 751.

Second, as to dental care in general, Plaintiff again fails to connect his various assertions to a serious medical need. Plaintiff offers only vague factual allegations

supporting his conclusory assertion that "defendants have not performed adequate and timely schedules, checkups nor followups." *See, e.g.*, Compl. at 10 ("Defendants in the past came up with a novel defense that I . . . had refused or waived treatment. I can't say that I recollect such, but I do know that since 1997 I've been on scheduled appointment lists, that most I never had or knew when they were scheduled or rescheduled to."). And Plaintiff's allegations of denial of dental floss, dental floss picks, or Listerine amount only to a difference in opinion with the treatment that has been prescribed, which is not actionable under the Eighth Amendment. *See Gamble*, 429 U.S. at 107; *Moore v. Neal*, No. 97-1420, 1998 WL 339713, at *2 (10th Cir. June 24, 1998) ("A prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional claim."); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires."); *cf. Moore*, 1998 WL 339713, at *1 n.1 (noting the plaintiff's concession that "denial of dental floss, by itself, does not constitute an Eighth Amendment violation").[6]

For all of these reasons, Plaintiff cannot pursue this § 1983 claim against any Defendant and also has failed to plausibly suggest that any Defendant has acted with the requisite deliberate indifference to a *serious* medical need. Plaintiff's Eighth Amendment

---

[6] Plaintiff's assertion that he was denied dental care and supplies is also undermined by the Complaint's description of treatment that he has received. *See* Compl. at 10; *cf. id.* ("I've kept ample supplies of toothpaste . . . .").

claims based on medical, dental, and vision care should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C. Plaintiff's Retaliatory Transfer Claim

Plaintiff next alleges that he was transferred away from LCF to his current facility, OSP, as punishment for having reported and complained about the sexual and physical assault of October 25, 2013. *See* Compl. at 3, 4, 6 (citing Prison Rape Elimination Act of 2003, 42 U.S.C. §§ 15601-15609). Plaintiff alleges that Defendants Rios, Caldwell, Gibson, Phume, Roody, DeAlmenau, Sessurs, Smith, Alston, Ellington, and Calhoun "individually and in concert contributed to a grand scheme and conspiracy that involved" Defendants Johns and Patton "in a fake and bogus allegation that I had killed an inmate, caused others to overdose and even raped another inmate." Compl. at 6. According to Plaintiff, these Defendants "masterminded" this "elaborate plot" to effectuate Plaintiff's removal from the Protective Custody Unit at LCF for placement into the general population at the maximum-security facility OSP. *See id.* Plaintiff alleges that these Defendants knew that at OSP "attempts had been made [o]n my life and where staff carries an old grudge still." *Id.*; *see also id.* at 5 (alleging that attempts were made to kill Plaintiff when he was housed at OSP at some date between 1986 and 1996). Plaintiff alleges that since he's been at OSP he has lost over 50 pounds, has had property and his mail taken and destroyed against his will by prison staff, and now is in mortal danger. *See id.* at 6.

Liberally construed, Plaintiff raises three separate claims regarding his transfer from LCF to OSP: (1) a conspiracy claim under 42 U.S.C. § 1985(3); (2) an Eighth Amendment failure-to-protect claim; and (3) a First Amendment retaliation claim.

    1.  <u>Conspiracy Claim</u>

"The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)); *see also* 42 U.S.C. § 1985(3) (providing a federal cause of action for conspiracy to deprive a person of protected rights). To plausibly state a conspiracy claim upon which relief may be granted, a plaintiff must "allege specific facts showing agreement and concerted action among" the defendants. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id*. (internal quotation marks omitted).

Plaintiff's Complaint alleges that Defendants "agreed" and acted "in concert" to have Plaintiff transferred to OSP and that Plaintiff was in fact transferred from LCF to OSP. While these statements *conclude* there was an improper agreement among Defendants, Plaintiff has alleged no specific facts to actually *show* any such agreement, as required to establish that a conspiracy existed. Further, except possibly as a retaliatory act, as discussed below, the action allegedly taken pursuant to such an agreement—the transfer of Plaintiff to another facility—does not constitute a deprivation of Plaintiff's rights. *Hunt*, 17 F.3d at 1266; *see also Tilton*, 6 F.3d at 685-87; *Dixon v. City of Lawton*,

898 F.2d 1443, 1449 (10th Cir. 1990) ("[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights[.]").

Accordingly, Plaintiff's conspiracy claim should be dismissed without prejudice in its entirety for failure to state a claim upon which relief may be granted. *See Hunt*, 17 F.3d at 1266; *Tilton*, 6 F.3d at 685-87; *see, e.g.*, *Kirby v. Dall. Cnty. Adult Probation Dep't*, 359 F. App'x 27, 33-34 (10th Cir. 2009) (affirming dismissal of conspiracy claim against unknown employees of detention center under Rule 12(b)(6) and explaining that "the liberal pleading standard under the federal rules 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions'" (quoting *Iqbal*, 556 U.S. at 678-79)).

## 2. Eighth Amendment Failure-to-Protect Claim

In addition to a duty to provide adequate medical care, prison officials "must take reasonable measures to guarantee the safety of the inmates" and have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832, 833 (internal quotation marks omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. "Therefore, in order to establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff 'must show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834).

"The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (internal quotation marks omitted).

Plaintiff's allegations fail to meet both the objective and subjective components of a failure-to-protect claim. According to his pleading, since being at OSP Plaintiff has lost weight, had unspecified property and mail destroyed, been denied access to the courts in an unidentified manner, and now has his life "in danger." *See* Compl. at 6, 9. Plaintiff does not connect his weight loss with any action taken by an OSP inmate or staff member, or any OSP-specific conditions, and therefore does not establish that his conditions of confinement actually "pos[e] a substantial risk of serious harm," thereby implicating the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Farmer*, 511 U.S. at 834; *Benefield*, 241 F.3d at 1271. Plaintiff's vague, nonspecific allegations regarding his property, mail, and court access are insufficient to plausibly demonstrate "an excessive risk" to his "health or safety" that was disregarded by any Defendant. *See Farmer*, 511 U.S. at 837; *Benefield*, 241 F.3d at 1271. And Plaintiff's bare statement that his life is in danger, even coupled with an assertion that threats were made against him at OSP decades ago, likewise does not constitute a well-pleaded factual allegation showing a disregarded "substantial risk of serious harm" or injuries that are plausibly "'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006). Plaintiff's Eighth Amendment

failure-to-protect claim therefore should be dismissed without prejudice for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

### 3. First Amendment Retaliation Claim

Prison officials may not retaliate against an inmate on account of, or otherwise harass an inmate in retaliation for, the inmate's exercise of his constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948.

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007); *accord Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010).

In reviewing a prisoner's claim of retaliation, however, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing *Turner v. Safley*, 482 U.S. 78 (1987)). Thus, to prevail on a retaliation claim, a prisoner must ultimately show that the challenged actions would not have occurred "but for" a retaliatory motive. *Id.*; *see also Brown v. Wyo. Dep't of Corr. State Penitentiary Warden*, 234 F. App'x 874, 877-78 (10th Cir. 2007) ("[A] prisoner claiming retaliation must allege specific facts showing retaliation [on account] of the exercise of the prisoner's constitutional rights,

and he must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." (second alteration in original) (citation and internal quotation marks omitted)).

With respect to the first element of this claim, Plaintiff alleges that he engaged in the activity of reporting and complaining about "the PREA sexual and physical assault and battery staff did to me [o]n October 25, 2013." Compl. at 3. Plaintiff does not specify what he reported, or to whom, or whether he complained internally, externally, or both, but the Tenth Circuit has indicated that raising even internal complaints can be an exercise of constitutionally protected conduct. *See Gee*, 627 F.3d at 1189; *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006). As to the second element, Plaintiff alleges that he was transferred to OSP at some unspecified date after January 9, 2014, but prior to March 25, 2015. *See* Compl. at 1, 6, 17; *Gee*, 627 F.3d at 1189 (holding that allegation of transfer to an out-of-state supermax prison described a chilling responsive action). Finally, Plaintiff specifically alleges that he is only minimum-security status, but he was sent to the maximum-security OSP facility, and that this transfer was effected to "punish[] me for reporting the PREA sexual and physical assault and battery" at LCF. Compl. at 3, 6; *see Gee*, 627 F.3d at 1189 (finding the third element of a retaliatory transfer claim was met where the plaintiff alleged "that Defendants were aware of his protected activity, that his protected activity complained of Defendants' actions, and that the transfer was in close temporal proximity to the protected activity").

GEO Defendants, while reciting the proper standard for evaluating the viability of a First Amendment retaliation claim, do not specifically dispute that Plaintiff has pleaded

such a claim. *See* GEO Defs.' Mot. at 11-12 (citing *Peterson*, 149 F.3d 1140). Nor do GEO Defendants contend that Plaintiff has failed to adequately allege personal involvement or participation of those Defendants identified in connection with this claim in the Complaint, *see id.* Instead, GEO Defendants inexplicably conflate Plaintiff's First Amendment claim with his Eighth Amendment failure-to-protect claim, requesting that his retaliatory transfer claim be dismissed because Plaintiff fails to "meet the requirements of the deliberate indifference test" that is applied on claims for violation of the Eighth Amendment. *See id.* This request should be denied.

As outlined above, Plaintiff has plausibly alleged an independent First Amendment retaliation claim, and Plaintiff is not required meet such Eighth Amendment requirements on this claim. "While a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution." *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990) (alteration and internal quotation marks omitted); *accord Fogle*, 435 F.3d at 1263-64. Plaintiff's allegations regarding his reporting of the October 25, 2013 assault lack detail but are sufficient to plausibly state that complaints were made. *See Fogle*, 435 F.3d at 1264. And his remaining allegations "may be improbable, but they are not implausible." *Gee*, 627 F.3d at 1189. Having reviewed these allegations pursuant to the Court's screening obligation, Plaintiff has adequately alleged all the elements of a First Amendment retaliatory transfer claim against Defendants Rios, Caldwell, Gibson, Phume, Roody, DeAlmenau, Sessurs,

Smith, Alston, Ellington, and Calhoun. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1). Accordingly, this claim should not be dismissed as to those Defendants.

Defendant Patton separately seeks dismissal of this claim on the basis that Plaintiff fails to allege this defendant's personal involvement or participation in the complained-of transfer. *See* Def. Patton's Mot. at 9-10. Defendant Patton's argument is well-taken, as Plaintiff merely alleges that Defendant Patton was "involved" in some way with the transfer that was undertaken by other, identified Defendants. Compl. at 6. This claim should be dismissed without prejudice as to Defendant Patton pursuant to Federal Rule of Civil Procedure 12(b)(6).

Finally, because Plaintiff's claim fails to reasonably implicate Defendants GEO, Taime, Rauche, Wiltshire, Benoit, Hill, Cation, Cantwell, or Johns, this claim also should be dismissed without prejudice as to those Defendants for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1).

### D. Plaintiff's First Amendment Claim: Refusal to Answer Grievances

Plaintiff alleges that Defendants have violated the First Amendment because they have "stalled, withheld or refused to answer" grievances. Compl. at 8.[7] As recognized by the Tenth Circuit, however,

---

[7] The Complaint states that this claim is "continued in page 3,d," but no such page appears in the document. *See* Compl. at 8. The undersigned has reviewed the original paper file for this case and has verified that every page Plaintiff submitted for filing was scanned in by the Clerk for the U.S. District Court for the Eastern District of Oklahoma and now appears in the Complaint (docketed in this Court at ECF No. 1).

there is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process. *See Bingham v. Thomas,* 654 F.3d 1171, 1177-78 (11th Cir. 2011) (observing that inmates have no constitutionally-protected liberty interest in access to prison grievance procedure); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest . . . ." (quotation and brackets omitted)). Instead, "[w]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam).

*Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Brewer v. Gilroy*, 625 F. App'x 827, 838 (10th Cir. 2015) (holding that the plaintiff had "no independent due process rights" arising from prison employees' disposition of internal grievances).

Plaintiff's claim that Defendants have stalled or refused to answer administrative grievances therefore fails to allege a violation of the First Amendment (or the Fourteenth Amendment) upon which relief can be granted. In addition, Plaintiff fails to provide sufficient factual support for this claim and does not identify any Defendant personally involved in the allegedly improper conduct. This claim should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### E. Plaintiff's Claim Regarding Medical Payments

Plaintiff asserts that when he was incarcerated in the past, he had no prison payment requirements. Compl. at 11. Plaintiff thus challenges: (i) "the retroactive application of any new law or policies that may require me to pay for any medical or healthcare, for I should be grandfathered under the laws and policies in effect in 1994

when I came into the prison system"; (ii) the "app[arent]" "'double billing' practice, for taxpayers are paying a daily fee for each incarcerated prisoner that includes housing, food, and medical." Compl. at 11.

Plaintiff's complaint as to a post-1994 imposition of an administrative copay cannot reasonably allege a constitutional violation. Plaintiff appears to argue that the copay requirement is a violation of the Ex Post Facto Clause, U.S. Const. art. I, § 10, cl. 1.

> Article I of the Constitution provides that the States shall not pass ex post facto laws. The ex post facto prohibition forbids the enactment of a law imposing additional punishment on that prescribed at the time the offense was committed. *Weaver v. Graham*, 450 U.S. 24, 28 (1981). In order for a law to be ex post facto, (1) it must be retrospective, applying to events occurring before enactment, and (2) it must disadvantage the prisoner. *Id.* at 29. The law, however, need not impair a vested right.

*Arnold v. Cody*, 951 F.2d 280, 281 (10th Cir. 1991) (citation omitted). "Whether a state law is properly characterized as falling under the *Ex Post Facto* Clause . . . is a federal question we determine for ourselves." *Carmell v. Texas*, 529 U.S. 513, 544 n.31 (2000).

Assuming the truth of Plaintiff's allegations regarding a post-1994 prison or state administrative policy, Plaintiff has suffered from no retroactive application of criminal law that implicates the Ex Post Facto Clause. In affirming the dismissal of a nearly identical claim, the Tenth Circuit explained that the "'prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them.'" *Tijerina v. Patterson*, 507 F. App'x 807, 809 (10th Cir. 2013) (alteration omitted) (quoting *Collins v. Youngblood*, 497 U.S. 37, 41 (1990)). "The Clause prohibits laws that make a previously innocent act criminal, increase the punishment for a crime after its

commission, or deprive a defendant of a defense that was available at the time a crime was committed." *Id.* The Tenth Circuit agreed with the district court that prison medical copays imposed after the plaintiff already was convicted "are not attached to [the plaintiff's] criminal conviction but instead are charged for medical services rendered." *Id.* The appellate court held that the challenged medical copay statute "was not intended to punish" and its requirements did not "transform the law into punishment." *Id.* Applying this persuasive reasoning here, the medical copay requirement of which Plaintiff complains neither "imposes . . . punishment" nor "aggravate[s]" "the conditions of his punishment," and "the Ex Post Facto Clause is not implicated." *Id.* (internal quotation marks omitted).

Plaintiff's assertions that inmates are charged for medical services do not plausibly support an Eighth Amendment claim, because "he has not alleged that he had any serious medical need that went untreated" due to this copay requirement. *Canell*, 141 F. Supp. 2d at 1057; *cf. Cannon v. Mason*, 340 F. App'x 495, 499 (10th Cir. 2009) ("The fact the prison's policy requires inmates with adequate resources to pay a small cost for their health care is not unconstitutional."). And Plaintiff is not entitled to seek relief for an injury allegedly suffered by the taxpayers of Oklahoma by way of his personal 42 U.S.C. § 1983 lawsuit. *See Swoboda v. Dubach*, 992 F.2d 286, 289-90 (10th Cir. 1993).

This claim should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.    Plaintiff's Request for Injunctive Relief

In his Complaint, Plaintiff states that he is seeking a temporary restraining order and preliminary injunctive relief.  *See* Compl. at 6, 14; *see also* Pl.'s Resp. to Def. Patton Mot. at 9.  Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b).  Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney."  *See* Fed. R. Civ. P. 65(b)(1).  Because Defendants have had both notice and an opportunity to respond to Plaintiff's pleading, the Court should treat the request for a TRO as superseded by the alternative request for a preliminary injunction.  *See, e.g.*, *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987); *see also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2951 (3d ed. 2013).

Plaintiff has not met his burden to show that entry of a preliminary injunction is warranted.  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  For entry of a preliminary injunction, the applicant generally must satisfy four elements: (1) a substantial likelihood that he or she will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the

public interest.  *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

Here, Plaintiff has not even specified what extraordinary relief he seeks to receive while this lawsuit is pending and therefore has not alleged how he would suffer irreparable harm absent that relief.  Nor has Plaintiff, by merely asking for injunctive relief, shown that the requested injunction is not adverse to the public interest—the relevant public interest here being deference to prison officials' proper administration of their prison facilities.  A federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation.  *See* 18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012).  The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987).  Assuming the relief Plaintiff seeks includes transfer away from OSP, granting the relief Plaintiff seeks would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take.  *See Safley*, 482 U.S. at 84-86; *cf. Stephens*, 494 F. App'x at 912 (affirming denial of requested injunctive relief as "overbroad and more intrusive than necessary").

For all of these reasons, Plaintiff's Motion for a Preliminary Injunction should be denied.  *See, e.g.*, *Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb.

4, 2000) (affirming denial of temporary restraining order in which "the relief requested was not consistent with the public interest").

RECOMMENDATION

For the reasons outlined above, the undersigned recommends that Defendant Patton's Motion to Dismiss (Doc. No. 49) be granted in its entirety and that GEO Defendants' Motion to Dismiss (Doc. No. 68) be granted in part. Specifically:

(i)     Plaintiff's 42 U.S.C. § 1983 claims for money damages against Defendant Patton in his official capacity should be dismissed pursuant to the Eleventh Amendment;

(ii)    All claims against Defendants Patton, GEO, Benoit, Cation, Cantwell, and Johns should be dismissed for failure to state a claim upon which relief can be granted;

(iii)   Plaintiff's Eighth Amendment claims based upon inadequate medical, dental, and vision care and upon a failure to protect should be dismissed for failure to state a claim upon which relief can be granted;

(iv)    Plaintiff's First Amendment claim based upon Defendants' failure to answer grievances should be dismissed for failure to state a claim upon which relief can be granted;

(v)     Plaintiff's conspiracy claim and medical-copayments claim should be dismissed for failure to state a claim upon which relief can be granted;

(vi)    Plaintiff's Eighth Amendment excessive-force claim should not be dismissed as to Defendants Taime, Rauche, Wiltshire, Hill, and Roody;

(vii)     Plaintiff's First Amendment retaliatory transfer claim should not be dismissed as to Defendants Rios, Caldwell, Gibson, Phume, Roody, DeAlmenau, Sessurs, Smith, Alston, Ellington, and Calhoun; and

(viii)    Plaintiff's request for preliminary injunctive relief should be denied.

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court on or before March 28, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 10th day of March, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE