# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GEORGE SOLER YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-641-R** |
| | ) | |
| **HECTOR A. RIOS, Warden, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is Magistrate Judge Charles C. Goodwin's Report and Recommendation screening Plaintiff's Amended Complaint. *See* Doc. 116. Plaintiff brings various civil rights claims under 42 U.S.C. § 1983 against thirty-six Defendants affiliated with Lawton Correctional Facility, GEO Group, Inc., Oklahoma Department of Corrections, and Oklahoma State Penitentiary. *See* Amended Complaint, Doc. 102. Plaintiff alleges he was assaulted by various correctional officers, threatened and retaliated against for reporting it, and deprived of necessary medical care and protection. Judge Goodwin recommended partial dismissal of Plaintiff's claims, and Plaintiff has objected only to these sections of the Report. *See* Doc. 119. Plaintiff also filed four motions for injunctive relief (Docs. 94, 107, 108, 114) that the Court has considered. The Court reviews Plaintiff's objections to the Report de novo and adopts the Report in part. Plaintiff's motions for injunctive relief are DISMISSED, and the Amended Complaint is DISMISSED in part. The Court dismisses all but the following claims:

1

1. Eighth Amendment claim against Defendants Hill, Time, Rauch, Wiltshire, Roody, Jones, and Tweedy for assault and failure to intervene

2. Eighth Amendment claim against Defendants Hill, Time, Rauch, Wiltshire, Roody, Jones, and Tweedy for failure to provide necessary medical care directly following the assault

3. First Amendment claim against Defendant Rios for transferring Plaintiff from LCF protective custody to retaliate for reporting the assault

4. First Amendment claim against Defendant Benoit for making retaliatory threats that Plaintiff would never leave segregation if he reported the assault

## I.   Plaintiff's Amended Complaint

Plaintiff's Amended Complaint names thirty-six Defendants: Hector A. Rios, Lawton Correctional Facility ("LCF") Warden; GEO Group, Inc. ("GEO"); Reed Smith, GEO Vice-President; Rick Whitten, LCF Deputy Warden; LCF staff members Time, Hill, Roody, Rauch, Wiltshire, Ford, Tweedy, Jones, Benoit, Gibson, Sessums, McCracken, Zold, Deason, Plume, Waite, Cation, Cornelius, Johns, Calhoun, Ellington, and Alston; Robert Patton, former Oklahoma Department of Corrections ("ODOC") Director; Joe M. Allbaugh, ODOC Director; ODOC staff members Greg Williams, Lesia Miser, and Natalie Cooper; Anita Trammell, former Oklahoma State Penitentiary ("OSP") Warden; Terry Royal, OSP Warden; and OSP staff members Gene Winningham,[1] Eric Thomas, and Jerry Perry.[2] *See* Doc. 102, at 1–6. Plaintiff names all Defendants in their individual capacity,

---

[1] Judge Goodwin's Report refers to Defendant Gene "Willingham," whereas Plaintiff's Amended Complaint names Defendant Gene "Winningham." Doc. 116, at 3, 21. The Court looks to Plaintiff's Amended Complaint.
[2] Plaintiff also names "John and/or Jane Does" and intends to "reserve [his] right to add or delete any and all Defendants which discovery shows to be participants, and/or who directly or indirectly may have violated [his] civil rights." Doc. 102, at 6.

and the following in their official capacity as well: Rios, GEO, Smith, Patton, Allbaugh, Williams, Miser, Cooper, and Royal.

Liberally and reasonably construed, Plaintiff brings the following claims for monetary damages under 42 U.S.C. § 1983:

1. Eighth Amendment claim against Defendants Hill, Time, Rauch, Wiltshire, Roody, Jones, and Tweedy for assault and failure to intervene

2. Eighth Amendment claim against Defendant Rios for failure to train and supervise employees to prevent the assault

3. Eighth Amendment claim against Defendants Hill, Time, Rauch, Wiltshire, Roody, Jones, and Tweedy for failure to provide Plaintiff necessary medical care directly following his assault

4. Eighth Amendment claim against Defendants for failure to provide Plaintiff necessary medical care until two days after the assault

5. Eighth Amendment claim against Defendants Deason, Patton, Allbaugh, Rios, and GEO for withholding necessary dental care.

6. Eighth Amendment claim against Defendants McCracken and Zold for withholding necessary psychiatric care.

7. Conspiracy claim against Defendants Rios, Patton, White, Plume, Whitten, Williams and Miser for agreeing to transfer Plaintiff from LCF protective custody in retaliation for reporting the assault

8. First Amendment claim against Defendants Rios, Patton, White, Plume, Whitten, Williams and Miser for transferring Plaintiff from LCF protective custody to retaliate for reporting the assault

9. First Amendment claim against Defendant Benoit for making retaliatory threats that Plaintiff would never leave segregation if he reported the assault

10. Eighth Amendment claim against Defendants Rios, Patton, White, Plume, Whitten, Williams, and Miser for failing to protect Plaintiff from serious harm

## II. Discussion

In screening Plaintiff's Amended Complaint *in forma pauperis* (*see* Doc. 4), the Court must dismiss any portion that is frivolous, malicious, or fails to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(a)–(b); 42 U.S.C. § 1997e(c)(1)–(2); *Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007). Further, while the Court construes a pro se litigant's pleadings liberally, *Kay*, 500 F.3d at 1218, it "should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." *Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992).

The standard of review for dismissals under § 1915(e) is the same as for Rule 12(b)(6) dismissals for failure to state a claim. *Kay*, 500 F.3d. at 1217. In determining whether dismissal is proper, the Court "must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Id.* (quoting *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002)). The complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. Pro. 8(a)(2)). "The pleading standard . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Such conclusory allegations are not entitled to the Court's presumption for Plaintiff. Instead, he must plead facts that at least make the claims plausible and raise the "right of relief above the speculative level." *Twombly*, 550

4

U.S. at 558. Thus, from Plaintiff's Amended Complaint, Defendants must learn "what [they] did to [Plaintiff]; when [they] did it; how [their] action harmed [Plaintiff]; and what specific legal right [Plaintiff] believes [they] violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Justice Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Before reviewing Plaintiff's claims, the Court summarily dismisses the following Defendants named in the Amended Complaint because Plaintiff fails to plead specific allegations against them: Smith, Sessums, Gibson, Cation, Calhoun, Johns, Alston, Ellington, Trammel, Royal,[3] Ford, Cornelius, Winningham, Thomas, Perry, and Cooper. Further, the Court dismisses the following Defendants named in the original complaint because Plaintiff fails to name them in his Amended Complaint: LCF Officer DeAlmenau, Lt. Cantwell, and LCF Deputy Warden Caldwell.[4] *Compare* Doc. 1, at 13, *with* Doc. 102. Plaintiff failed to inform them "what [they] did to [Plaintiff]; when [they] did it; how [their] action harmed [Plaintiff]; and, what specific legal right [Plaintiff] believes [they] violated." *Nasious*, 492 F.3d at 1163.

## A. Eleventh Amendment State Sovereign Immunity

Defendants Allbaugh, Williams, Miser, and Cooper are Oklahoma employees entitled to sovereign immunity from Plaintiff's official-capacity claims. The Eleventh Amendment protects states from damages suits unless Congress has abrogated sovereign

---

[3] Defendant Royal, OSP's Warden, is also entitled to state sovereign immunity from Plaintiff's official capacity claim. *See infra* Part II(A).
[4] The Court initially found that Plaintiff's claims against Defendants DeAlmenau and Caldwell should survive Defendants' Motion to Dismiss, but cautioned Plaintiff that the Amended Complaint "must contain all of the allegations, claims, and parties he intends to be before this Court." Doc. 95, at 3. Plaintiff failed to rename DeAlmenau and Caldwell, and the Court dismisses them accordingly.

immunity or the state has waived it. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). The immunity extends to state agencies and officials "because 'a suit against a state official in his or her official capacity . . . is no different than a suit against the state itself.'" *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)); *see also Cleveland v. Martin*, 590 Fed. App'x 726, 730 (10th Cir. 2014) ("Because the defendants are employees of the Oklahoma Department of Corrections . . . , the Eleventh Amendment applies to the official-capacity claims for damages."). "[S]ection 1983 does not abrogate a state's sovereign immunity." *Muscogee*, 611 F.3d at 1227. Further, "Oklahoma has not consented to be sued in federal court." *Berry v. Oklahoma*, 495 Fed. App'x 920, 921 (10th Cir. 2012). Therefore, Plaintiff's official-capacity claims for money damages against Defendants Allbaugh, Williams, Miser, and Cooper—state officials of the ODOC—do not state plausible grounds for relief.

## B. Eighth Amendment Claim for Assault

Plaintiff alleges various Eighth Amendment violations pursuant to 42 U.S.C. § 1983, the first of which is an assault by various LCF officers in October of 2013. Section 1983 protects "right[s] secured by the Constitution and laws of the United States," and Plaintiff must show that the alleged deprivation was "committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Phillips v. Tiona*, 508 Fed. App'x 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by inmates . . . ."). The Eighth Amendment prohibits "cruel and unusual punishment." In the prison context, this

entails "excessive physical force against prisoners," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), or "depriv[ing] inmates of the minimal civilized measure of life's necessities." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To bring a Section 1983 suit against an individual defendant for an Eighth Amendment violation, Plaintiff must first allege facts establishing "personal involvement or participation" in the alleged violation. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). This requirement holds for supervisory defendants as well because even though "direct participation" is unnecessary, liability must "be predicated on a violation traceable to a defendant-official's 'own individual actions." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676)). Second, there must be a causal connection, or an "affirmative link," between the constitutional deprivation and the acts of the defendant. *Grimsley*, 93 F.3d at 679; *see also Iqbal*, 556 U.S. at 676. Third, the "defendant prison official [must] have a culpable state of mind, [such] that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Shannon*, 257 F.3d at 1168 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In other words, the Court asks whether Defendant applied force "in a good faith effort to maintain or restore discipline" or to "maliciously and sadistically . . . caus[e] harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986).

Plaintiff clearly pleads a plausible excessive force violation against Defendants Hill, Time, Rauch, Wiltshire, Roody, Jones, and Tweedy. Plaintiff alleges that on October 25th, 2013, Defendants Hill, Time, Rauch, and Wiltshire locked him in a disciplinary cell, strip

searched him for contraband, and then pushed, punched, and kicked him repeatedly. *See* Doc. 102, at 11. Meanwhile, Defendant Time "roughly insert[ed] his fingers in and out of [Plaintiff's] rectum." *Id.* This caused scars, broken and lose teeth, a protruding bone from Plaintiff's neck, and bleeding out of his mouth, temple, and rectum. *Id.* at 13. Defendants Roody, Jones, and Tweedy allegedly stood outside the cell and did nothing to "stop or report the assault." *Id.* at 13. As alleged, Defendants Hill, Time, Rauch, and Wiltshire personally and deliberately applied excessive force without a reasonable disciplinary justification, while Defendants Roody, Jones, and Tweedy stood by and failed to intervene. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) ("[A] prison official's failure to protect an inmate from a known harm may constitute a constitutional violation."). Plaintiff has a "constitutional right to be secure in [his] bodily integrity and free from attack by prison guards." *Id.* Plaintiff therefore plausibly asserts an Eighth Amendment claim against Defendants Hill, Time, Rauch, Wiltshire, Roody, Jones, and Tweedy.

The same cannot be said for Plaintiff's related claim against LCF Warden, Defendant Rios. "Section 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). The "affirmative link between the supervisor and the constitutional violation" requires "more than 'a supervisor's mere knowledge of his subordinate's' conduct." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 677). It requires "(1) personal involvement, (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 767. Plaintiff claims that Defendant Rios failed to train and supervise LCF employees and to investigate and resolve prisoner complaints, deliberately ignoring a substantial risk that

such inaction would cause harm to Plaintiff. *See* Doc. 102, at 14. However, Plaintiff fails to identify any affirmative link, as in how Defendant's individual conduct caused Plaintiff's injury. He makes one non-conclusory allegation that Defendant Rios knew that prior to the alleged assault, LCF officers similarly assaulted another inmate in the shower. It is unclear Defendant Rios even knew of this incident, and if he did, how acting upon that incident would have prevented Plaintiff's alleged harm. Pleading "fail[ure] to adequately train and/or supervise staff" does not put Defendant on notice as to how he could have prevented such an incident. *Id.* Instead, Plaintiff couches an improper § 1983 respondeat superior claim in the guise of a claim for failure to train, supervise, or investigate. His Eighth Amendment claim against Defendant Rios is therefore dismissed.

## C. Eighth Amendment Claim for Denial of Needed Medical Care

Liberally construed, Plaintiff alleges four Eighth Amendment claims for denial of needed medical care: (1) Defendants Tweedy, Wiltshire, Hill, Time, Rauch, Roody, and Jones failed to take him for medical care directly after witnessing the 2013 assault (*see* Doc. 102, at 11); (2) Defendants failed to take him for medical care until two days after the assault (*see id.* at 12, 16); (3) Defendants Deason, Patton, Allbaugh, Rios, and GEO withheld dental care (*see id.* at 16); and (4) Defendants McCracken and Zold withheld psychiatric care (*see id.* at 12). Prison officials must "provide humane conditions of confinement," and refrain from knowingly "disregard[ing] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 832, 837.

First, Plaintiff plausibly claims an Eighth Amendment violation against Defendants Tweedy, Wiltshire, Hill, Time, Rauch, Roody, and Jones for failing to take him "for

medical help after the handcuffs had been removed and [he] was left naked in [the] cell."
Doc. 102, at 11. Plaintiff allegedly asked Defendants Tweedy and Wiltshire for medical help and they refused. Given the apparent blood, scars, and injuries Plaintiff exhibited following his alleged assault (*see id.* at 16), Plaintiff states a plausible claim that Tweedy and Wiltshire knowingly disregarded an "excessive risk" to his safety by refusing to help get him medical attention. *Farmer*, 511 U.S. at 837. The Court also construes Plaintiff's complaint liberally to state a plausible claim for failure to provide medical care against Defendants Hill, Time, Rauch, Roody, and Jones. Granted, Plaintiff only expressly alleges that he asked Defendants Tweedy and Wiltshire for medical assistance. *See* Doc. 102, at 11. However, Plaintiff also alleges that Defendants Hill, Time, Rauch, and Wiltshire assaulted him while Defendants Roody and Jones stood outside and failed to intervene. This left Plaintiff with scars, broken and lose teeth, a protruding bone from his neck, and blood out of his mouth, temple, and rectum. *Id.* at 13. Thus, Plaintiff plausibly claims that these Defendants similarly observed and knowingly disregarded an "excessive risk" to Plaintiff's safety in violation of the Eighth Amendment.

Plaintiff's second, more general, allegation against "Defendants" for failing to take him for medical attention until two days after the assault lacks the factual information necessary to identify what claim Plaintiff is asserting against which Defendant. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("'[I]t is particularly important' that plaintiffs 'make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations.'") (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Plaintiff suggests that his October 29th, 2013,

grievance report to Defendant Whitten regarding the alleged sexual assault imposed a requisite duty to provide medical care that Whitten deliberately ignored; yet, Plaintiff filed the report two days after he admittedly received medical care. *See* Doc. 102, at 12; Doc. 102-10. Therefore, Plaintiff cannot maintain an Eighth Amendment claim against Whitten or all Defendants by pleading an "undifferentiated contention that 'defendants' infringed his rights." *Pahls*, 718 F.3d at 1226.

Third, Plaintiff fails to plead a plausible claim that Defendants Deason, Patton, Allbaugh, Rios, and GEO withheld "needed [dental] treatment." Doc. 102, at 16. To qualify as a "serious medical need," Plaintiff must allege more than a dentures recommendation from the LCF dentist, Defendant Deason. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). He must show that withholding care constituted "unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). For example, other symptoms such as excessive bleeding, severe pain, inability to eat, significant weight loss, or infection resulting from inadequate dental care tend to show an Eighth Amendment injury. *See Kidwell v. Oklahoma Dep't of Corr.*, No. 13-CV-612-TCK-PJC, 2014 WL 2171647, at *11 (N.D. Okla. May 23, 2014) (listing examples of plausible Eighth Amendment claims when plaintiffs allege denial of dentures "in combination with certain other symptoms"). Instead, Plaintiff cites an academic journal to warn of the potentially serious harm caused by inadequate dental care; he also claims that Defendants' inaction "has already affected [his] physical well being." Doc. 102, at 16; *see* doc. 102-25. Such speculative and conclusory allegations fail to state a plausible claim for relief.

Fourth, Plaintiff's claim against Defendants McCracken and Zold for withholding psychiatric care also falls short. He questions whether Defendant McCracken ever stopped by his cell on October 30, 2013, following the alleged sexual assault. *See* Doc. 102, at 12. He allegedly asked repeatedly for Defendant Zold's "intervention and help," but neither she nor Defendant McCracken attended to him. *Id.* These conclusory allegations fail to show a serious medical need or deliberate indifference. Therefore, the Court dismisses this claim as well.

## D. Remaining Conspiracy, Retaliation, and Failure to Protect Claims

Plaintiff alleges a conspiracy among prison officials to transfer him, cover up his assault claims, and leave him at risk of further harm. His particular allegations are difficult to track, but the Court construes four claims:[5] (1) Defendants Rios, Patton, White, Plume, Whitten, Williams and Miser conspired to transfer him from LCF protective custody (*see* Doc. 102, at 14–15); (2) Defendants Rios, Patton, White, Plume, Whitten, Williams and Miser transferred Plaintiff from LCF protective custody to retaliate for reporting the 2013 assault, in violation of the First Amendment (*see id.* at 10, 14–15); (3) Defendant Benoit made retaliatory threats that Plaintiff would never leave segregation if he reported the 2013 assault, in violation of the First Amendment (*see id.* at 11–12);[6] and (4) Defendants Rios,

---

[5] Plaintiff also devotes a significant part of his Amended Complaint to numerous alleged transfers and incidents during his prior terms of incarceration up to thirty years ago, which implicate ODOC Deputy Director Cameron, Warden Morton, and various unnamed officers. *See* Doc. 102, at 8–10. To the extent Plaintiff seeks relief for these matters, he has not pled with sufficient particularity for the Court to liberally construe plausible claims.

[6] Plaintiff also alleges that Defendant Roody was "smiling and laughing" alongside Defendant Benoit as Plaintiff failed to get medical treatment. Doc. 102, at 11. Although discussed alongside his retaliatory threat allegation, this do not plausibly implicate Defendant Roody for a First Amendment violation.

Patton, White, Plume, Whitten, Williams, and Miser failed to protect Plaintiff from serious harm in violation of the Eighth Amendment (*see id.* at 10, 14–15).

## 1. Conspiracy

Plaintiff's conspiracy claim fails to present plausible grounds for relief. Conspiracy is "a viable claim under § 1983," *Robinson v. Maruffi*, 895 F.2d 649, 654 (10th Cir. 1990), but "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (quoting *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989)). There is an "inherent difficulty of producing direct evidence of a conspiracy." *Hunt*, 17 F.3d at 1268. At a minimum, Plaintiff must "allege specific facts showing agreement and concerted action among" Defendants. *Id.* at 1266. Plaintiff alleges that he was in protective custody at LCF after repeated threats to him because he is a former prospective corrections officer. *See* Doc. 102, at 8, 10. Defendants Rios, Patton, White, Plume, Whitten, Williams and Miser allegedly conspired to transfer him from protective custody—because he reported the 2013 assault—by making up allegations that he violently harmed fellow inmates. *See id.* at 14. Plaintiff claims that Defendant Whitten was aware of the assault allegations and that Defendant Williams was aware of Plaintiff's complaint to Governor Fallon. *See id.* at 12, 15. However, Plaintiff fails to plead facts exhibiting an agreement among Defendants. The Court therefore dismisses Plaintiff's conspiracy claim.

## 2. First Amendment Retaliation Claims

Plaintiff alleges two separate instances of retaliation. A First Amendment retaliation claim requires the following:

(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007). The test for chilling speech is an objective one. *Id.* (citing *Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004)). Plaintiff's first retaliation claim is that Defendants Rios, Patton, White, Plume, Whitten, Williams and Miser retaliated against him by transferring him from LCF protective custody to OSP on February 19th, 2014, because he reported the alleged assault to Defendant Whitten on October 29th, 2013. *See* Doc. 102, at 10; Doc. 102-10 ("I was sexually assaulted by your staff and you['re] punishing me?"). Seeking justification to transfer him and mask the retaliation, "they" made up that Plaintiff killed an inmate, raped an inmate, and caused others to overdose. *See* Doc. 102, at 14. Temporal proximity is insufficient to show retaliation because Plaintiff has not alleged particular facts that plausibly show Defendants Patton, White, Plume, Whitten, Williams or Miser caused his transfer or possessed the requisite "retaliatory intent." *Worrell v. Henry*, 219 F.3d 1197, 1213 (10th Cir. 2000). Plaintiff therefore cannot satisfy the second or third requirement for First Amendment retaliation against these Defendants.

Construed liberally, however, Plaintiff states a plausible claim against Defendant Rios. In addition to allegedly making up crimes to justify the transfer, Defendant Rios personally "put[] in a transfer request after [Plaintiff] reported the . . . assault." Doc. 102, at 14. Plaintiff's claim that Rios acted "deliberately and maliciously" is conclusory and

insufficient to show intent. *Id.* Nonetheless, Plaintiff plausibly claims that as LCF Warden, Rios "knew or should have known" the content of the grievance form submitted to his Deputy Warden, Defendant Whitten, alleging that LCF officers sexually assaulted an inmate. *Id.*; *see* Doc. 102-10. This establishes the necessary nexus between the grievance and transfer. Thus, Plaintiff alleges a plausible First Amendment claim: (1) constitutionally protected activity—reporting officers' violent sexual assault; (2) Defendant Rios personally orchestrated the transfer out of protective custody, which would plausibly chill an ordinary person from reporting; and (3) Rios transferred Plaintiff because of the grievance report, justifying the transfer instead on made-up grounds.

Plaintiff's second retaliation claim plausibly alleges that Defendant Benoit violated his First Amendment right. Benoit allegedly "kept his verbal threats and told [Plaintiff] that if [Plaintiff] kept complaining he would make sure [Plaintiff] would never get released from segregation[,] A.K.A. seg." Doc. 102, at 11–12. Just before making these threats, Benoit was allegedly "smiling and laughing" near Plaintiff outside LCF's medical facility and alongside Defendant Roody, one of the officers who allegedly watched and did nothing as Plaintiff was sexually assaulted by other officers. Doc. 102, at 11; *see id.* at 13.

First, Plaintiff clearly has a First Amendment right to report the alleged sexual assault he experienced on October 25th, 2013. Second, Defendant Benoit threatened Plaintiff further time in segregation, which is enough of an injury—construed liberally in the context of (1) Plaintiff's alleged assault just days before and (2) Defendant Benoit "laughing" alongside one of the alleged assaulters shortly before making the threats—to "chill a person of ordinary firmness" from filing a grievance. That Plaintiff *did* report the

alleged assault (Doc. 102-10) in spite of Defendant Benoit's threats does not preclude a finding that the threats were objectively chilling. *See Eaton*, 379 F.3d at 954–55. Such a conclusion would impose a perverse Catch-22—Plaintiff would have to forego redress from prison grievance officers just to petition the Court for First Amendment relief. *See Rhodes v. Robinson*, 408 F.3d 559, 568–69 (9th Cir. 2005). Third, Plaintiff alleges the threats were made to target constitutionally protected speech. Thus, Plaintiff's First Amendment claim against Defendant Benoit for retaliatory threats survives the Court's screening.

### 3. Eighth Amendment Failure to Protect

From the same conspiracy and retaliation allegations, Plaintiff fails to present a plausible Eighth Amendment claim. Again, the Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates" and address "substantial risk[s] of serious harm." *Farmer*, 511 U.S. at 833; *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001). Plaintiff references "real threats to [his] safety" made in 2004 that led him to LCF protective custody. Doc. 102, at 10. Yet, it is unclear these threats remain now that he is no longer in LCF protective custody. Regardless, he has not pled with sufficient particularity a "substantial risk of serious harm." *Benefield*, 241 F.3d at 1271. The Court therefore dismisses this Eighth Amendment claim.

### III.  Claims for Injunctive Relief

Plaintiff filed the following four motions for injunctive relief:

1. Plaintiff's Plea to Court to Order Defendants, Their Agents or Successors to Stop This Ongoing Retaliation, Return All My Property They Just Confiscated and to Keep Me Out of Harm's Way ("First Motion for

Preliminary Injunction," Doc. 94), requesting Defendants return Plaintiff's legal materials and transfer him back to protective custody at LCF

2. Declaration in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction ("Second Motion for Preliminary Injunction," Doc. 107), requesting an immediate hearing, termination of retaliation, placement into protective custody, no cellmate while at OSP, and/or immediate release

3. Plaintiff's Motion to be Granted Injunction/TRO Against Defendants for Cause[7] ("Third Motion for Preliminary Injunction," Doc. 108), requesting transfer back to protective custody at LCF, a hearing, or release

4. Plaintiff's Federal Question and Petition to be Granted Preliminary Injunction and TRO ("Fourth Motion for Preliminary Injunction," Doc. 114), requesting transfer back to protective custody at LCF

The Court denies the motions for three reasons. First, his recent transfer to Joseph Harp Correctional Center ("JHCC") moots any requested relief from Defendants at OSP. Plaintiff was transferred to JHCC in Lexington, Oklahoma, sometime before August 17th, 2017. *See* Doc. 115. An injunction geared toward housing, legal materials, or further conduct at OSP would be moot because it could not confer Plaintiff any "conclusive relief." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011); *see Stephens v. Jones*, 494 F. App'x 906, 911 (10th Cir. 2012). Second, the Court is sensitive not to interfere in state prison administration, a significant public interest to weigh upon a motion for preliminary injunction. *Turner v. Safley*, 482 U.S. 78, 84–86 (1987). Third, Plaintiff's fears that he will be "seriously hurt or killed" once transferred from OSP into general population at another prison are speculative and unfounded. Therefore, Plaintiff has failed to satisfy the

---

[7] Plaintiff titles the third and fourth motion as motions for temporary restraining order, but considering the contemporary notice given to Defendants upon filing, the Court will construe both as motions for preliminary injunction. *See* Doc. 108, 114; Fed. R. Civ. Pro. 65(a)–(b).

requirements for a preliminary injunction and the Court denies all four motions. *See Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

## IV. Second Request to Amend

Before the Court is Plaintiff's Objection to Judge Goodwin's Second Report and Recommendation, which includes a second request to amend his complaint. *See* Doc. 119, at 3–4, 6–7. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (quoting *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir.2001)).

To properly consider this second request to amend, some background is necessary. Plaintiff George Soler Young filed his lawsuit against twenty-one defendants on March 31st, 2015. *See* Doc. 1. Following Defendants' 12(b)(6) motion, Judge Goodwin recommended dismissal of each of Plaintiff's claims, excluding an Eighth Amendment excessive force claim against five Defendants and a First Amendment retaliatory transfer claim against eleven Defendants. *See* First Report and Recommendation, Doc. 81. Most of Plaintiff's shortcomings concerned vagueness regarding who committed each alleged action, how they caused the requisite constitutional harm, and their state of mind. *See id.* The Court fully adopted the Report's reasoning, but granted Plaintiff thirty days to file an amended complaint by November 3rd, 2016, "address[ing] the deficiencies" discussed in the First Report. Doc. 95, at 3. The Court "caution[ed] Plaintiff that the Amended Complaint will stand on its own; accordingly, it must contain all of the allegations, claims, and parties he intends to be before this Court." *Id.*

Plaintiff experienced a setback, however, when Defendants allegedly deprived him of legal materials he felt were necessary to amend his complaint. Plaintiff's First Motion for Preliminary Injunction alleged that on September 28th, 2016, officers falsely accused him of possessing illegal contraband to justify confiscating all legal materials and draft filings in this case, leaving only his "institutional misconduct history, a couple books, and [the] special report and recommendation." Doc. 94, at 2.[8] The day before Plaintiff's amended complaint was due, he requested a twenty-day extension, citing this incident and the fact that Defendants failed to return most of his materials. *See* Doc. 97. Judge Goodwin granted Plaintiff a twenty-five day extension to November 28th, 2016. *See* Doc. 98. Plaintiff then requested a second extension for thirty days until December 28th, 2016, again citing his missing drafts and legal materials. *See* Doc. 99. Plaintiff claimed that Defendants returned only some legal materials, and that his case manager told him she was working on returning the rest. *Id.* Judge Goodwin granted a shortened extension to December 14th, but warned that he would not grant another amendment extension. *See* Doc. 101.

Plaintiff filed his Amended Complaint on December 15th, 2016, renaming eighteen of the original twenty-one defendants and adding eighteen more. *See* Doc. 102, at 2–6. Plaintiff also filed four motions for injunctive relief, repeating various requests to be placed in protective custody, transferred back to higher-security LCF, or released. *See* Docs. 94, 107, 108, 114. The Court re-referred the matter to Judge Goodwin, who screened Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a)–(b) and 42 U.S.C.

---

[8] Plaintiff made a similar obstruction claim in June of 2015, asking the Court for an extension of time to respond to Defendants' Motion to Dismiss. *See* Doc. 60.

§ 1997e(c)(1)–(2). *See* Second Report and Recommendation, Doc. 116. Judge Goodwin recommended dismissal of all but two Eighth Amendment claims because he found that the rest fail to present plausible grounds for relief. *See id.* at 4–5. On September 13th, 2017, the day before objections to the Second Report were due, Plaintiff requested another extension. *See* Doc. 117. Again citing his missing materials, Plaintiff claimed that had Judge Goodwin granted him the full thirty-day second extension to amend his complaint with full access to his materials, he would have been able to include other claims that he left out. *Id.* at 1-2. The Court granted Plaintiff's extension request until October 14th, 2017 (Doc. 118), after which Plaintiff filed his objection on October 17th. *See* Doc. 119.

Plaintiff now cites two reasons to restart his repeated amendment and extension exercise,[9] and both are belied by the record. First, Plaintiff claims that he did not "get the time . . . requested and needed to properly amend [his] petition." Doc. 119, at 3. Judge Goodwin granted Plaintiff two extensions to file his Amended Complaint due to the confiscation incident that prevented him from meeting the initial deadline.[10] *See* Docs. 98, 101. It appears that Plaintiff's primary critique is that Judge Goodwin second extension was only sixteen days, rather than thirty days like he requested. Nevertheless, in nine weeks, Plaintiff filed an Amended Complaint detailing factual allegations against thirty-six Defendants that spans 196 pages and twenty-eight exhibits. *See* Doc. 102. He fails to show how he was prejudiced by not receiving a second full extension.

---

[9] *See* Plaintiff's requests to amend filings and extend deadlines, Docs. 60, 70, 73, 82, 89, 97, 99, 102, and 117.
[10] *See* Doc. 101, at 1 ("Absent extraordinary circumstances, no further extension of this deadline will be permitted.")

Second, Plaintiff claims that "OSP is deliberately withholding [his] legal exhibits, documents, and books," but because he has a book on filing federal lawsuits and is no longer in an isolated cell, he now "understands what is expected" and "can correct most of [his] deficiencies by clarifying . . . who[] did what, when and where." *Id.* at 3–4. The Court already asked Plaintiff "who," "what," "when," and "where" when it reviewed Judge Goodwin's First Report. Plaintiff assures the Court that he understands this time, but what has changed? He still claims many of his *legal* materials are missing, none of which are actually necessary to cure the *factual* deficiencies in his complaint—Plaintiff merely failed to present "enough facts to state a claim to relief that is plausible on its face."[11] *Twombly*, 550 U.S. at 547.

Granted, the task of drafting a plausible complaint requires basic knowledge of each claim's elements. However, no book on filing federal suits could supplement his memory of who did what to him. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged

---

[11] *See* First Report and Recommendation, Doc. 81, at 11 ("Plaintiff does not allege facts regarding Defendant Rios' involvement or participation such as would be required to state a claim against him. . . . Plaintiff does not identify any of the other 15 Defendants as direct or indirect actors in the events of October 25, 2013."), 16–17 ("Plaintiff . . . alleges only that the attack caused nonspecific pain and presents no allegations that support an inference that he was suffering from an obvious, 'sufficiently serious' medical need. . . . And even assuming Plaintiff's vision constituted a sufficiently serious medical need, Plaintiff nowhere identifies a Defendant who knew of and disregarded this need or intentionally delayed Plaintiff's access to vision care."), 18 ("Plaintiff offers only 'collective allegations' and fails to 'make clear exactly *who* is alleged to have done *what* to *whom*,' as required to impose personal liability under § 1983."), 19 ("Although the Complaint alleges that Plaintiff lost 'over 50' pounds after being transferred to OSP, Plaintiff does not allege that this weight loss was caused by his lack of dentures. . . . And Plaintiff's speculative concerns about possible future health issues caused by his dental condition are too vague and unsupported to establish either a diagnosed or obvious serious medical need."), 22 ("While these statements *conclude* there was an improper agreement among Defendants, Plaintiff has alleged no specific facts to actually *show* any such agreement . . . .").

injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted."). Further, Plaintiff still had his "institutional misconduct history, a couple books, and [the] special report and recommendation." Doc. 94, at 2. It is unclear if Plaintiff was referring to the Special Report (Doc. 67) or the First Report and Recommendation (Doc. 84), but both summarize his original complaint in great detail. Thus, Plaintiff fails to show why he could not fill in the factual gaps in his complaint to plausibly state claims against each Defendant. The Court asked Plaintiff to recount what happened, gave him nine weeks to do so, and explained the repercussions of failing to do so. Granting leave to amend again would be futile, and the Court denies Plaintiff's second request to amend.

## V.    Conclusion

Plaintiff is left with two Eighth Amendment claims against Defendants Hill, Time, Rauch, Wiltshire, Roody, Jones, and Tweedy (Claims 1 and 3)[12]; a First Amendment claim against Defendant Rios (Claim 8); and a First Amendment Claim against Defendant Benoit (Claim 9). Plaintiff's remaining Claims 2, 4, 5, 6, 7, and 10 are therefore DISMISSED, and Claim 8 is DISMISSED in part with respect to Defendants Patton, White, Plume, Whitten, Williams and Miser. His motions for injunctive relief (Docs. 94, 107, 108, 114) are also DISMISSED.    This matter is re-referred to Magistrate Judge Charles C. Goodwin for further proceedings consistent with the original referral herein.

---

[12] Claim numbers herein refer to the Court's Amended Complaint summary in Part I, at 3.

IT IS SO ORDERED this 14th day of November, 2017.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE